BROWN GAVALAS & FROMM LLP
Attorneys for Plaintiff
DOMINION BULK CHARTERING LTD.
355 Lexington Avenue
New York, New York 10017
212-983-8500

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DOMINION BULK CHARTERING LTD.,

        Plaintiff,

  -against-

AMERICA METALS TRADING LLP,

        Defendant.
------------------------------------------------------------X



10 Civ. 4187

**VERIFIED COMPLAINT**

Plaintiff, DOMINION BULK CHARTERING LTD. ("Plaintiff"), by its attorneys, Brown Gavalas & Fromm LLP, as and for its Verified Complaint against defendant AMERICA METALS TRADING LLP ("Defendant"), alleges upon information and belief as follows:

1. This is a case of admiralty and maritime jurisdiction, as hereinafter more fully appears, and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. The Court has jurisdiction under 28 U.S.C. § 1333.

2. At all material times, Plaintiff was and now is a foreign corporation organized and existing under and by virtue of the laws of Liberia with an office and place of business at 80 Broad Street, Monrovia, Liberia.

3. Upon information and belief, at all material times Defendant was and still is a foreign corporation organized and existing under and by virtue of the laws of a foreign country, with an office and place of business at The American House, 81 Fenchurch Street, London EC3M 4BT, United Kingdom.

4. At all material times, Plaintiff was the disponent owner of the motor vessels CAPETAN MINAS, SWIFT STRONG, ALASKA RAINBOW, HALANDRIANI, and ELPIDA.

## AS AND FOR A FIRST CAUSE OF ACTION

5. On or about July 18, 2007, Plaintiff, as disponent owner, and Defendant, as charterer, entered into a charter agreement whereby Plaintiff agreed to let, and Defendant agreed to hire, the CAPETAN MINAS to transport a cargo of pig iron ("the Cargo"), under certain terms and conditions, from Rio de Janeiro, Brazil to an unspecified port on the Mississippi River ("the CAPETAN MINAS Charterparty").

6. Plaintiff duly delivered the CAPETAN MINAS to Defendant pursuant to the terms of the CAPETAN MINAS Charterparty, and the CAPETAN MINAS was directed in September 2007 by Defendant to Rio de Janeiro, Brazil for loading of the Cargo.

7. Pursuant to Clause 19 of the CAPETAN MINAS Charterparty, Defendant is "ultimately responsible" for damages to the CAPETAN MINAS caused by stevedores during loading and discharge of the Cargo.

8. On or about September 7, 2007, while the Cargo was being loaded onto the CAPETAN MINAS at Rio de Janeiro, a stevedore negligently operated and mishandled Crane No. 1 of the CAPETAN MINAS thereby causing extensive damage to that crane and to the CAPETAN MINAS.

9. Despite Plaintiff's best efforts, the stevedores at Rio de Janeiro have denied liability for damage to Crane No. 1 and the CAPETAN MINAS, and have refused to pay for damage arising out of the stevedore's negligent operation and mishandling of Crane No. 1.

10. The negligent operation, mishandling and subsequent damage to Crane No. 1 and the CAPETAN MINAS, have resulted in losses in the amount of $208,777.18 to repair physical

damage caused by the stevedores in Rio de Janeiro.

11.     Claims have been made against Plaintiff by the registered owners of the CAPETAN MINAS for physical damage to Crane No. 1 and to the CAPETAN MINAS as a result of the negligent operation and mishandling of the crane by stevedores in Rio de Janeiro. Plaintiff has furnished security to the registered owners of the CAPETAN MINAS in respect to the said claim for physical damage, and Plaintiff seeks indemnity from Defendant for all such damages as may be assessed and adjudged against Plaintiff.

12.     As a result of the damage to Crane No. 1 and the CAPETAN MINAS, Plaintiff has also incurred additional costs and disbursements in Rio de Janeiro for which Defendant is ultimately responsible. These additional costs, which include but are not limited to launch rental, watchmen, and agency fees, have resulted in damages to Plaintiff in the amount of $37,027.61, for which Defendant bears ultimate responsibility under the terms of the Charterparty.

13.     Additionally, under the terms of the CAPETAN MINAS Charterparty, Plaintiff is entitled to demurrage at a rate of $40,000.00 per day in the event Defendant exceeds the time allotted for discharge under the CAPETAN MINAS Charterparty.

14.     Defendant exceeded the time allotted under the CAPETAN MINAS Charterparty by 20.9398 days. Accordingly, after adjustments for dispatch earned by Defendant and funds received on account, demurrage in the amount of $824,914.33 is currently due and owing from Defendant.

15.     Despite due demand therefore, Defendant has refused to pay the above-listed sums, in the total amount of $1,070,719.12, and this amount is currently due and owing to Plaintiff.

## AS AND FOR A SECOND CAUSE OF ACTION

16. On or about September 12, 2007, Plaintiff, as disponent Owner, and Defendant, as Charterer, entered into an agreement whereby Plaintiff agreed to let, and Defendant agreed to hire, the vessel ALASKA RAINBOW, under certain terms and conditions, to transport a cargo of pig iron from Vila do Conde, Brazil to an unspecified port on the Mississippi River ("the ALASKA RAINBOW Charterparty").

17. On or about January 8, 2008, Plaintiff, as disponent owner, and Defendant, as charterer, entered into an agreement whereby Plaintiff agreed to let, and Defendant agreed to hire, the vessel SWIFT STRONG to transport a cargo of pig iron, under certain terms and conditions, from ports in Brazil to Porto Marghera or Trieste, Italy ("the SWIFT STRONG Charterparty").

18. On or about March 30, 2007, Plaintiff, as disponent Owner, and Defendant, as Charterer, entered into an agreement whereby the Plaintiff agreed to let, and Defendant agreed to hire, the vessel HALANDRIANI to transport a cargo of pig iron, under certain terms and conditions, from Brazil to Morehead City, North Carolina and Marinette, Wisconsin ("the HALANDRIANI Charterparty").

19. On or about February 23, 2007 and June 19, 2007, Plaintiff, as disponent Owner, and Defendant, as Charterer, entered into two agreements whereby the Plaintiff agreed to let and the Defendant agreed to hire the ELPIDA to transport cargoes of pig iron from Brazil to Morehead City, North Carolina and/or Marinette, Wisconsin (together, "the ELPIDA Charterparties").

20. Plaintiff performed all its obligations under the SWIFT STRONG, ALASKA RAINBOW, HALANDRIANI, and ELPIDA Charterparties.

4

21. On or about April 11, 2008, Plaintiff issued a Final Freight Invoice to Defendant reflecting a balance of $55,460.42 due to Plaintiff under the SWIFT STRONG, ALASKA RAINBOW, HALANDRIANI, and ELPIDA Charterparties.

22. Defendant has failed and refused to pay the above amount due under the SWIFT STRONG, ALASKA RAINBOW, HALANDRIANI, and ELPIDA Charterparties, despite due demand therefor.

23. Under the terms of the CAPETAN MINAS, SWIFT STRONG, ALASKA RAINBOW, HALANDRIANI, and ELPIDA Charterparties, all disputes between the parties are to be decided by arbitration in London, pursuant to English law. London arbitration proceedings are currently underway and documentary discovery has now been completed.

24. This action is in aid of said London arbitration proceedings in accordance with 9 U.S.C. § 8. Plaintiff seeks to obtain adequate security to satisfy a potential London arbitration award in Plaintiff's favor.

25. After investigation, Defendant cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims. Plaintiff believes that Defendant has property located within this District, specifically (i) a U.S. dollar collection account with Deutsche Bank and (ii) $50 million in bonds within the possession of Dinosaur Securities, L.L.C., an investment brokerage firm located in New York City that serves as the "placement agent" for Defendant's securities.

26. According to the complaint filed in this Court in the action titled *Phoenix Bulk Carriers, Ltd. v. America Metals Trading, LLP*, No. 10 Civ. 2963 (NRB), a "Roadshow Presentation" and investment term sheets provided to potential investors state that Defendant recently initiated a $50 million bond offer in New York to non U.S.-based investors to raise

working capital for the pig iron operations of Cosipar, a mining and smelting operation located in Brazil.[1]

27. Upon information and belief, under this scheme, Cosipar will provide 100 percent of the pig iron to Defendant, which commodity the Defendant will sell directly to consumers in the United States and abroad in U.S. dollar transactions.

28. Upon information and belief, in exchange for this exclusive pig iron supply, Defendant has provided $50 million in working capital to Cosipar, which the Defendant will in turn recoup through the issuance of a $50 million bond offer placed with Dinosaur Securities in New York.

29. Upon information and belief, the pig iron consumers, in turn, will directly deposit their payments into Defendant's U.S. dollar collection account at Deutsche Bank, which account serves as collateral for Defendant's bonds that have been placed with Dinosaur Securities.

30. Upon information and belief, Deutsche Bank is the principal paying, collateral and fiscal agent and trustee of the payments that will serve as collateral.

31. As the entire financing transaction involving placement of the bonds centers on Dinosaur Securities located in New York City, and because the deposits will serve as collateral for the bonds, Plaintiff submits that the U.S.-dollar collection account at Deutsche Bank is likely located here as well.

32. Based on the foregoing, Plaintiff submits that Defendant currently maintains property in this district, both in the form of (i) the bonds within the possession of Defendant's placement agent, Dinosaur Securities, and (ii) cash deposits with Deutsche Bank in the U.S.-dollar collection account.

---

[1] Both Cosipar and the Defendant are owned by the Costa Montiero Group. This Group owns 77.3 percent of Cosipar and 100 percent of America Metals Trading, LLP.

6

33. In addition to recovering the principal amount due Plaintiff pursuant to the Charterparties, Plaintiff also fully anticipates recovering interest, arbitration costs (including arbitrators' fees), and attorneys' fees, insofar as such costs are routinely awarded to the prevailing party in London arbitration proceedings. As best as can now be estimated, Plaintiff expects to recover the following amounts in the London arbitration:

| | | |
|---|---|---|
| a. | On the principal claims | $1,126,179.54 |
| b. | 3 years (anticipated duration of London arbitration) of interest at 6% per annum, compounded quarterly | $220,301.18 |
| c. | Legal Costs (arbitrators' fees, attorneys' fees, etc.) | $300,000.00 |
| | TOTAL | $1,646,480.72 |

34. Upon information and belief, Defendant cannot be found within the District, within the meaning of Supplemental Rule B of the Federal Rules Civil Procedure, but is believed to have or will have during the pendency of this action assets within this District, specifically including cash, funds, freight, hire, accounts, and other property, in the hands of garnishees Deutsche Bank or Dinosaur Securities, L.L.C., which are believed to be due and owing to the Defendant.

Plaintiff prays:

A. That process in due form of law according to the practice of this Court in admiralty and maritime jurisdiction issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

B. That because the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of the Court to issue Process of Attachment and Garnishment, pursuant to

7

Rule B of the Supplemental Admiralty Rules and the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all cash, goods, chattels, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds held by any garnishee, which are due and owing to the Defendant, in the amount of $1,646,480.72, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B, answer the matters alleged;

C. That this action be stayed and this Court retain jurisdiction over this matter through the entry of any judgment or award, and any appeals thereof; and

D. That Plaintiff have such other, further and different relief as this Court may deem just and proper.

Dated: New York, New York
       May 21, 2010

                                BROWN GAVALAS & FROMM LLP
                                Attorneys for Plaintiff
                                DOMINION BULK CHARTERING LTD.

                          By: _____
                                Peter Skoufalos (PS-0105)
                                355 Lexington Avenue
                                New York, New York 10017
                                212-983-8500

## VERIFICATION

STATE OF NEW YORK    )
                     : ss.:
COUNTY OF NEW YORK   )

PETER SKOUFALOS, being duly sworn, deposes and says:

1. I am a member of the bar of this Honorable Court and of the firm of Brown Gavalas & Fromm LLP, attorneys for Plaintiff.

2. I have read the foregoing Verified Complaint and I believe the contents thereof are true.

3. The reason this Verification is made by deponent and not by Plaintiff is that Plaintiff is a foreign corporation, no officer or director of which is within this jurisdiction.

4. The sources of my information and belief are documents provided to me and statements made to me by representatives of the Plaintiff.

_____
PETER SKOUFALOS

Sworn to before me this
21st day of May, 2010

_____
Notary Public

EVAN B. RUDNICKI
Notary Public of the State of New York
No. 02RU6142314
Qualified in New York County
Term Expires March 13, 2013